

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

DEC 27 2021

RICK WARREN
COURT CLERK

108 _____

IN THE DISTRICT COURT OF OKLAHOMA COUNTY, STATE OF OKLAHOMA

Albert G. Gerhart.

      Plaintiff;

Case No. CJ-21- 3992

v.

REPUBLICAN PARTY OF OKLAHOMA,
and JOHN ROBERT BENNETT CHAIRMAN
OF THE REPUBLICAN PARTY, and SHANE
DILLON JEMISON VICE CHAIRMAN OF THE
REPUBLICAN PARTY, and PAMELA ANN
POLLARD NATIONAL COMMITTEEWOMAN
OF THE REPUBLICAN PARTY, and STEVEN
WALTER CURRY NATIONAL
COMMITTEEMAN OF THE REPUBLICAN
PARTY
      Defendants.

## PLAINTIFF'S ANSWER TO DEFENDANT'S DECEMBER 7TH ANSWER TO MOTION FOR RECONSIDERATION

Under "Arguments and Authorities" Hillis continues to claim that the Plaintiff will not prevail upon the merits, suffer irreparable harm, and that the injunctions are not in the public interest. He does so while quoting court decisions outlining how the State has an interest in a strong two party political system and ignoring how Defendant John Bennett has completely wrecked the Republican Party and alienated the majority of the Republicans in the state. Hillis claims that the Plaintiff's loss of Associational Rights with the Party and other members of the Party doesn't constitute irreparable harm while inexplicably fighting for that same right for the Party.

   Next Hillis claims the Plaintiff has no standing despite a clear State Statute governing unincorporated associations and the Party bylaw accepting state statutes to cover any issues or procedure not covered in the bylaws:

1

*OS 12-2023.1. Derivative actions by shareholders states* "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the petition shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law. The petition shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs. Added by Laws 1984, c. 164, § 24, eff. Nov. 1, 1984.*

*Oklahoma Republican Party Bylaw 20 c) Matters not covered by Rules:* All question of procedure and other matters affecting the Oklahoma Republican Party, or any of its organizations, unit meetings, or conventions, which are not specifically covered in these rules shall be governed by Robert's Rules of Order, Newly Revised, and the law of the State of Oklahoma, whichever may be applicable.*

Hillis wishes the Court to ignore these two facts and in fact Hillis has ignored even responding to the standing these give the Plaintiff. Likewise Hillis refuses to acknowledge that the Republican Party suffers no harm if it follows its own bylaws put in place by the Party itself and also not acknowledging that the only person to suffer harm is Defendant John Bennett being held accountable for massive bylaw transgressions caused by his running the Party as a dictatorship. The previous court decisions quoted by Hillis ad nauseam state that the Court has a right to get involved in Party matters where State interests need protecting and non of the court decisions used by Hillis were cases where the plaintiff was not given due process by the political party, the cases involved the State itself trying to ask for a member list or manage who can and cannot vote in a primary, or there was a complaint handled within the political party structure that was not handled satisfactory so the plaintiff escalated the case to district court. Not a single case quoted by Hillis contained a plaintiff not receiving due process through the political party nor were their clashes of the party's Associational Rights with the plaintiff's Associational Rights. Furthermore, all of those cases involving a clash between a political party and its own members were about the Party itself removing party members for just cause and

2

after a process where the member's Associational Rights were protected, not from a rogue leadership working on its own without even notifying the ruling entity of the party of the matter.

On page 3 of Hillis's response he claims that the three elements of standing are not present, 1. that injury occurred, 2. relief can be given by the Court, and 3. the interest to be guarded is within a constitutionally protected zone.

Hillis claims that the Plaintiff cannot demonstrate that Bennett and his agents/staff harmed the Plaintiff yet the statement by Bennett's Chief of Staff Leslie Nessmith actually bragged about how she, Bennett, and his Executive Director Bob Dani conspired to "remove all access" to the Party from the Plaintiff and how Nessmith worked to interfere in anything the Plaintiff did for the Party. Hillis complains that Facebook postings were done by non parties to the lawsuit while ignoring that they were agents or staff working under Bennett and perhaps doing his bidding. One of these individuals, Brian Hobbs, the Field Agent for the Republican Party has admitted that he was present in the room at the Republican Party headquarters when the nasty attack letter, the Jpeg of the black background white text letter, was created and discussed. Hobbs made these comments to David Van Resseghem as part of a negotiation to escape being named in the separate libel lawsuit filed by the Plaintiff, requesting that David Van Resseghem arrange a face to face meeting with the Plaintiff to disclose more details of the libelous attack. At the time Hobbs was complaining that he himself had been passed over for a higher position and was being squeezed out of the inner leadership team by others. This is a question of fact that requires discovery and a jury to adjudicate, it is not a legal decision that a judge can handle as a matter of law.

Next Hillis claims that the Plaintiff somehow has to prove a right to attend meetings that had always been open historically to anyone and claiming that Rule 3A which gives the sacred and inviolable right to participate is somehow overruled by ultra vires acts by the Chairman or his staff.

3

There is NOTHING in the bylaws that allow for a closed meeting and if Rule 20c kicks in and invokes Roberts Rules of Order then a motion to close the meeting to executive session for the discussion of sensitive matters would have been required and that was not done. Defendant Bennett chose to act ultra vires, beyond the authority of his position, and summarily close the July 17th meeting without justification as part of his admitted conspiracy to "close off all access" to the Plaintiff in violation of Rule 3A.

And again, the survey/petition was not a matter that required the Party to approve or disapprove, Executive Director Bob Dani was told of the survey/petition and that a copy of the results would be given to him and Bennett. Interfering with a petition that would have showed that 80% of the Republican delegates were opposed to turning the Party into a Pentecostal Church was a serious matter as the Party controls important state functions and opposition to turning the Party into a theocracy was not tolerated by Bennett or his staff/agents. The last part of page 3 of Hillis's response claims that the Plaintiff had no right to enter the premises or act on the behalf of the Party while ignoring that every single project had been cleared by Chairman Bennett himself or his Executive Director Bob Dani who had literally closed off access to Bennett by requiring that all matters come through him as E.D.. There are exhibits attached to numerous filings of the Plaintiff showing text messages, group emails with Bennett and his staff, and even recorded phone calls where E.D. Bob Dani discussed these matters and gave permission to proceed. These were projects like lawn mowing, inventory labels and scanner, procuring a new U.S. Flag, fixing the flag pole, repairing the broken air conditioning system, installing a security system, reworking the flower beds outside, and installing a sprinkler system. Perhaps Bennett and Hillis believe that they have the prerogative to change their minds after clearing a project and others raising money and getting much needed things done but they cannot argue that the Plaintiff was not given permission. In one phone call E.D. Bob Dani made

4

a point of saying to just go forward with projects, that Red Curve the accounting firm would sort things out, and this statement was met with the Plaintiff clearly stating that no, every project would be cleared and legal avenues of donation would be laid out before anything was done. The Plaintiff mentions this to show that at the time there was zero opposition to these projects shown until the last minute on the sprinkler project where thousands of dollars had already been donated weeks after the project had been approved. E.D. Bob Dani then attempted to convince the Plaintiff to divert the donations to operating funds, an unethical act as the money had been raised for another purpose, resulting in the person that collected the donations returning the money to the donors. For Hillis to claim there was no clearance given for these projects is simply a bald faced lie.

On page four of Hillis's response he quotes Tashijian v. Republican Party of Connecticut, E.U. v. San Francisco County Democratic Central Committee, and NAACP v. Alabama. Tashijian was about how political parties are best left to determine their own _structure_ to accomplish their goals. In that case the Court invalidated a state's closed primary law that prevented one party from inviting independent voters from participating in its primaries. No clash of association rights between Party and members, no due process claims. The Party is free to determine their structure and in doing so they included Bylaw 20 c that allows State law and Roberts Rules of Order to cover anything not covered by the Bylaws. E.U. never mentions bylaws not being followed, the E.U. Decision struck down a state law banning political parties from making political endorsements. The state law was compromising Party associational rights, no mention of friction between member versus political party associational rights were involved and there were no issues of due process involved in the case. E.U. protected the political party's right to organize itself, elect its leaders, and conduct its affairs. E.U. was NOT about the party refusing to follow its own bylaws and infringing upon its members rights of association, right of petition, and rights of free speech. And the NAACP decision was about the State of Alabama demanding membership lists, not about a political party whose bylaws DEMAND that these delegate lists be open records so that other delegates

and ANY REGISTERED REPUBLICAN in the state can petition and lobby these delegates. Hillis's point in mentioning these three cases was that the Plaintiff's exclusive remedy was to approach "a voting member of the State Committee" and institute removal proceedings under bylaw 19 g, which in fact that is not laid out specifically in the bylaws. What is laid out is that there are four people that can at anytime call for a State Committee meeting, the Chairman, Vice Chairman, and the two National Committee men, which together constitute the Central Committee, all of which were petitioned by letter by the Plaintiff and informed of the desire for a meeting to start this process, three of whom participated in back room discussions with the Plaintiff or others about doing so, and all of which ultimately refused to do their job and call for the State Committee meeting to remove Bennett. There is a fourth option for calling a State Committee meeting, getting 124 of the members to sign a petition to call for a meeting. That option is nearly impossible as Bennett has clearly demonstrated that any attempt to use the delegate list to contact the delegates to the convention which might contain most of these State Committee members is met with claims of improper use of the "proprietary" list and the Party's own website admits that they have removed the contact information for the county Republican organizations where one would be able to contact the four State Committee members in that particular county. This was done before August 5th of this year according to thewaybackmachine.org where it shows a snapshot of that contact page with the admission that the contact info had been removed and all attempts to contact the county party officials had to go through their own message system. Simply put, it is impossible to contact the State Committee members, even they do not have a complete list of their roster thanks to the machinations of Bennett and his agents/staff. And lastly, again, there is no clear process laid out to push a complaint for a Rule 3A violation, only a bylaw that states who is capable of calling a State Committee meeting, and the clear and concise bylaw 20c which states that the laws of the State of Oklahoma may apply where the bylaws are silent on an issue or process. Oklahoma Statute 12-2023.1. Derivative actions by shareholders provides the right of any member of an unincorporated association to file a lawsuit to protect the

rights given by that organization and Party bylaws has given the right of the State of Oklahoma and its courts to enforce those rights. This is not in controversy, AJ Ferate admitted that contract rights were involved but erroneously claimed these rights cannot be enforced.

In Oklahoma District Courts handle matters of both law and of equity. Judges may use the principle of equity to tread where law does not allow them to tread if it is for the advancement of right and justice and not let the Court fall into a position where immoral and unfair acts were protected by the Court:

> *The maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but 'upon considerations that make for the advancement of right and justice.' Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 148, 78 L.Ed. 293. It is not a rigid formula which 'trammels the free and just exercise of discretion.' Ibid., 290 U.S. pages 245, 246, 54 S.Ct. page 148, 78 L.Ed. 293.*

In Camp v. Camp the higher courts also made it clear that those involved in unlawful or inequitable conduct will not find shelter in a courtroom:

> *As we view the record, the judgment of the trial court is sustained under the view that plaintiff has not come into court with clean hands. The principle is fundamental of equity jurisprudence, 19 Amer. Juris. 323-4, and signifies that a litigant may be denied relief on the ground that his conduct has been inequitable. Inequitable conduct justifying denial of relief extends not only to parties dealing with each other but as well to private rights and interests of third persons.*
>
> *"Equity will not lend its aid in any manner to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief." 30 C.J.S. 475-6; Dow v. Worley, 126 Okla. 175, 256 P. 56; Murphy v. Garfield Oil Co., 98 Okla. 273, 225 P. 676; Rust et al. v. Gillespie, 90 Okla. 59, 216 P. 480.*
>
> *In the latter case it was held:*
>
> *"Under the maxim, 'he who comes into equity must come with clean hands,' a court of equity will not lend its aid in any manner to one who has been guilty of unlawful or inequitable conduct in a transaction from which he seeks relief, nor to one who has been a participant in a transaction, the purpose of which was to defraud a third person, to defraud creditors, or to defraud the government, nor to a party to a transaction whose purpose is violative of public policy."*
>
> *Camp v. Camp, 196 Okla. 199, 163 P.2d 970, 972 (1945)*

Hillis would have the Court to turn a blind eye to the actions of Defendant John Bennett after his own agents admitted he and others participated in a conspiracy to strip the Plaintiff of Associational Rights, to protect political thuggery and libel, and leave the settling of the matter to an impossible method of redress. As long as the four Central Committee members refuse to act and call for a State

Committee meeting and Defendant Bennett refuses to allow access to the State Committee member list then it is absolutely impossible for the Plaintiff to obtain any relief.

Hillis next butchers Clingman v. Beaver where the higher court found that the state law did not burden voter's Associational Rights as they could simply register with the Libertarian Party. Imagine the burden upon a voter wishing to contact officials in the Republican Party when the list of officials is held in secret. Imagine the burden upon a voter if they were stripped of Associational Rights and told that there was no process they could avail to be made whole. Hillis even makes the point for the Plaintiff when he states that Clingman advanced State interests such as having a political party viable, enhancing a party's electioneering and party building efforts and preventing "sore losers" candidacies after being rejected by the primary voters. The State does have the right to protect political parties including stepping in when one rogue official decides to turn the Party into a theocracy where only Pentecostals are welcome. The State has a right to get involved when the Party refuses to protect the Associational Rights of members or wastes donated funds paying political cronies or decides to protect sexual harassers simply because they are part of his team.

Clingman also gives the Court leeway to allow a minor burden upon a political party to ensure the Plaintiff's Constitutional rights and those of other Republicans are protected:

*"When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the '"character and magnitude"' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Burdick, supra, at 434 (quoting Anderson v. Celebrezze, 460 U. S. 780, 789 (1983)). Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. <u>Lesser burdens, however, trigger less exacting review, and a State's '"important regulatory interests"' will usually be enough to justify '"reasonable, nondiscriminatory restrictions."'</u> Burdick, supra, at 434 (quoting Anderson, supra, at 788); "*

The idea of asking a political party to follow its own bylaws is reasonable and nondiscriminatory as only the party itself sets the bylaws. The Court mentioned the reluctance of courts to get involved in political wrangles and that point is understood by the Plaintiff but the same argument can be made for

8

the idea that Courts not get involved in family matters. And yet they must because the State's purpose is to protect people's rights and that is usually protecting rights from each other. Obviously the idea that the courts stay out of politics completely has long been set aside yet there is not an avalanche of political cases simply because there are rulings that set ground rules and after all only three real political parties of any size and scope. Reminding people like John Bennett that he must be equitable and just and follow the bylaws would remind politicians throughout the state and nation that we are a nation of laws and prevent political squabbles and protect the Party from becoming more factionalized.

Hillis admits that the purpose of Clingman is to protect the integrity of political parties while laboring to prevent accountability in a case where his client or his agents bragged that they trampled on Associational Rights. This lawsuit is NOT an attempt to interfere with the inner control of a political party, it is an attempt to have the Party bylaws followed after the Defendant's making it impossible for the Plaintiff to receive relief under the clear bylaws of the Party. The Party is free at any time to change their bylaws and thus change the contract rights of the members but they choose not to when they realize that with the Court's possible help they can simply ignore these rights and jeer at the public stating "You cannot make me do the right thing." And Hillis is correct, the Plaintiff does not claim that the bylaws are inconsistent with state law as the bylaws make a clear statement of the Plaintiff's sacred and inviolate Associational Rights, makes clear the punishment to any official that interferes with those rights, and the process by which the State Committee can be called, but no process or policy is laid out to force the Central Committee to hold the Chairman accountable after he has broken not only Rule 3A but the rules on endorsing and aiding a primary candidate against an incumbent or other candidate belonging to the Republican Party. But again, Rule/bylaw 20c clearly states that State law may apply where the bylaws are not specific on "matters not covered by the rules."

And Hillis admits that the Party is not a corporation but an unincorporated association organized under Title 26 which has NO requirement for the filing of bylaws with anyone, not the Secretary of

State, not the Ethics Commission, not with the Election Board. Leaving one form of entity left, that of an unincorporated association which is certainly and specifically governed by Oklahoma Statute 12-2023.1. Derivative actions by shareholders. Hillis would have the Court not interfere with the internal policies of the Party but the Court would not do anything disruptive by telling the Defendant to follow Party bylaws, the Court would be ensuring that the Party managed its own affairs under their own rules. Remember that Chairman Bennett is not the Party, he is the executive officer that answers directly to the State Committee that the bylaws state are the ultimate authority of the Party while not at a state convention. The correct analogy would be a corporate CEO refusing to follow corporate bylaws and interfering with the rights of the corporation, its stockholders or members, and the State itself by violating State law. Yet the Defendant knows all he has to do is not call a State Committee meeting and he can run the Party as a dictatorship and trample on thousands of Republican's Associational Rights. The majority of Oklahoma Republicans don't hate gay people, they are not Pentecostals, they are not against vaccines or taking public health measures during a pandemic. They do not support letting perverts sexually harass volunteers or want their hard earned donations funneled to Bennett's political cronies when the Budget Committee and Finance Committee rightly refuse to approve the expenditures of thousands of dollars each month to pay off Bennett's political debts to his cronies. They are happy with our two U.S. Senators and don't want them replaced with far right religious candidates.

One case that Hillis refused to mention despite using it earlier is Nader v. Schaffer. In earlier filings Hillis was claiming that the Party has a right to organize itself and no interference is tolerated. Nader doesn't quite state that, it states that party member rights are entitled to affirmative protection of their associational rights especially in the candidate selection process (emphasis is mine):

> *The rights of party members may to some extent offset the importance of claimed conflicting rights asserted by persons challenging some aspect of the candidate selection process. 525 F.2d at 588; see also Cousins v. Wigoda, supra, 419 U.S. at 487, 95 S.Ct. 541. More importantly, party members are entitled to affirmative protection of their associational rights, see Note, 27 Rutgers L.Rev. 298 (1974). A party, were it a completely private organization with*

*no government regulation, could limit participation in its nominating process to party members. <u>In the regulated situation, the state has a legitimate interest in protecting party members' associational rights, by legislating to protect the party "from intrusion by those with adverse political principles."</u>*

Party members hold the high ground on Associational Rights with Hillis needing to prove that their affirmative protection doesn't apply or is overridden by the Party's rights, Nader seems to be quite clear; party members have the right to an affirmative protection of these rights, anyone wishing to trample on those rights has the duty to prove they have a right to do so and thus the Court must become involved. The Party is not a private organization, the State decides who can join and numerous other limitations and requirements upon the Party as the Party does important state actions requiring regulation for equity, to protect Associational Rights of everyone involved, and to protect the integrity of the Party itself.

Hillis has forgotten that Bentman v. Seventh Ward Democratic Executive Committee made it clear that there are times where not only may the court act, it must act :

*"Insofar as a political party performs statutorily-imposed public functions and to the extent that its actions constitute state action, the internal organization of such political party is a matter of such concern to the public as to make it subject to constitutional limitations and judicial restraint. <u>When the internal organization of a political party directly affects its performance of such public function then not only may the judiciary intervene but it must intervene.</u>"* **Bentman v. Seventh Ward Democratic Executive Committee**, 421 Pa. 188, 218 A.2d 261 (1966)

. Then in In Rice v. Elmore, <u>165 F.2d 387</u>, cert. den. 333 U.S. 875 (C.A. 4), the court reiterated that political parties are no longer country clubs. Political parties have become in effect state institutions through which candidates are elected by the people." (<u>165 F.2d at p. 389</u>) and that performing an important function for the State, "they may not violate the fundamental principles laid down by the Constitution for its exercise." (<u>165 F.2d at p. 391</u>).

"Insofar as a political party performs statutorily-imposed public functions and to the extent that its actions constitute state action, <u>the internal organization of such political party is a matter of such concern to the public as to make it subject to constitutional limitations and judicial restraint."</u>
10 See also id. at 202, 218 A.2d at 269

"When the activity of a party organization in such area or when its internal organization and membership has a direct bearing on its activity in such area is challenged as constitutionally offensive and it is claimed that, in the performance of its statutorily imposed duties amounting to state action, the party organization violates the concept of due process, <u>then the judiciary not only may but must intervene</u>."

All of these Constitutional rights are in play. Bennett is violating the fundamental principles of the Constitution by trampling on Associational Rights, he is violating the concept of due process both legally and with the bylaws of the Party in mind, and judicial restraint is the only remedy available as he and the other Central Committee members are refusing to follow the bylaws.

And mentioned in the Motion to Reconsider was Baker V. Carr;supra, at 209. 82 S. Ct. at 706 where it states this:

**"the mere fact that the suit seeks protection of a political right does not mean it presents a political question."**

And Snowden v. Hughes also lays out that just because political rights are involved it doesn't make a case unjusticable or diminish someone's rights:

"...discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights.' Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 402, 88 L.Ed. 497.

This is the crux of this lawsuit, the right of Party members having the right that bylaws are fairly followed, that they can participate and associate, and no one candidate is given preference in primary races. Defendant Bennett is acting as if the Party was a private organization and he was the dictator but the State of Oklahoma has a right in protecting the other Party member's rights. Defendant John Bennett is openly supporting far right religious candidates including one U.S. Senate candidate against the incumbent Senator which is a complete violation of the bylaws of the Party. This religious bigotry is contrary to the interests of the State in having a strong two party system and it tramples upon the Party member's associational rights. And Nader was about the State attempting to force a political party to have an open primary. It was not about a political party trying to strip its members of

organizational contract rights or using the law to trample upon the Plaintiff's Free Speech, Right to Petition, and Rights of Association.

Another court decision Mr. Hillis chose not to use the cases below as it would demolish his case and client:

Timmons v. Twin Cities Area New Party, 520 U.S. 351 (1997) (emphasis is mine)

*"The Court of Appeals determined that Minnesota's fusion ban imposed "severe" burdens on the New Party's associational rights, and so it required the State to show that the ban was narrowly tailored to serve compelling state interests. McKenna, 73 F. 3d, at 198. <u>We disagree; given the burdens imposed, the bar is not so high. Instead, the State's asserted regulatory interests need only be "sufficiently weighty to justify the limitation" imposed on the party's rights.</u> Norman, 502 U. S., at 288-289; Burdick, supra, at 434 (quoting Anderson, supra, at 788). Nor do we require elaborate, empirical verification of the weightiness of the State's asserted justifications. See Munro v. Socialist Workers Party, <u>479 U. S. 189,</u> 195-196 (1986) "State need not take the course California has, ... California <u>apparently believes with the Founding Fathers that splintered parties and unrestrained factionalism may do significant damage to the fabric of government.</u> See The Federalist No. 10 (Madison).*

The Court clearly saw the threat, this Court can allow political party bylaws to be ignored and aid a radical religious faction taking control of the Party, which leads to a platform and party that drives away the majority of the main line Republicans and conservative Republicans alike, thus depriving them of their First and Fourteenth Amendment rights or the Court can simply tell the Party to follow the bylaws. Asking a political Party to enforce their own bylaws is a light burden if one at all. And once again, the State of Oklahoma isn't asking for the Bylaws to be followed; a member of the Party is asking and the Party leadership is refusing to do so and thus creating a Constitutional failure.

The false light component is simply a way to introduce the fact that Defendant Bennett and/or his agents/staff conspired to create and turn loose a highly libelous letter in the form of a black background white text Jpeg for the simple purpose of making the Plaintiff radioactive by ruining his reputation. The libel lawsuit will slowly peel back the onion on exactly who was involved in writing that libel letter starting with the man that originally posted it on Facebook, the fact that the Defendant was a party to this libel is merely used to show that there is no limit to the evil he would do to trample upon the Plaintiff's Associational Rights. This lawsuit has been amended by dismissing the "at law" portions

13

of the conflict and focusing strictly on the "equity" portions of the dispute. In order for justice and equity to be done the Defendant can admit the Party agents/officials/volunteers were involved in writing that libel at the Party headquarters and the Court can decide if the act was part of the stripping of Associational Rights of the Plaintiff that the Defendant's own agent bragged about. Or the Defendant can continue to lie about how the Jpeg letter was written and let a jury decide the facts of the matter. The OCPA doesn't protect libel, it doesn't protect the trampling of Associational Rights, it protects them and is not to be used to force the Court into supporting their fraud and illegal acts.

The last paragraph under Authorities and Arguments claims that the Plaintiff has not proven that Bennett acted in his official capacity while these defamatory acts were committed. Both Hillis and the Court are fully knowledgeable that the acts of Bennett's agents and subordinates are his acts as well as a master/servant relationship exist with every one of his staff and appointed officers of the Party. Bennett was told of the libel attack through a three person Facebook messenger group set up by his wife Nicole years earlier with herself, the Plaintiff, and a lady named Jackie Walters-Crawford, using the group for Bennett's political campaigns. The three kept up a running conversation ever since and the full details of the attack upon the Plaintiff's Associational Rights were discussed, with Nicole Bennett asking for a meeting with the Defendant at one point to prevent the problem and later with the sordid details of the libel attack forwarded. And since the Republican Party headquarters were used to discuss and write the planned libel attack that alone pins responsibility on the Party and Bennett as the leader of the Party. The sole reason that the Plaintiff dismissed the other Central Committee members and the Party from the lawsuit was to make things simple for the long, hard road ahead as if the Court will not provide justice and equity then the case will have to be appealed as far as necessary. In the end, Bennett wishes the Court to use the OCPA to prevent discovery to prove the facts of the case, to trample upon the Plaintiff's rights and continue his goal of re making the Republican Party into a theocracy packed with conspiracy theorists who attack mainstream Churches like the Catholic Church,

the Baptists, Methodists, and a long list of others. Bennett wishes the Republican Party to become a Abolitionist Party, where even medical procedures that will save the life of a mother are outlawed, even birth control itself is considered abortion in this Abolitionist group. Bennett wishes to use the Party itself to attack sitting U.S. Senators and to support their primary opponents, all of which are extremely far right wing religious types in the Pentecostal Church.

In the Conclusion section Hillis claims that the Plaintiff has not demonstrated that the October 13th decision was contrary to law. In fact the Plaintiff has used the court decisions that Hillis brought to the fight to show that it was contrary to law. And Hillis cannot claim that the decision on October 13th was equitable as he wishes the Court to use the law to continue a fraud upon the voters and members of the Party.

"Equity will not suffer a wrong to be without a remedy"

"Equity will not allow a statute to be used as a cloak for fraud"

By the Plaintiff, Pro Se

Albert G. Gerhart
358 North Rockwell Ave
Oklahoma City, Ok, 73127
405-942-2644
al@thecarpentershop.net email

The undersigned certifies that a true and correct copy of the above and foregoing was mailed to the Defendant's attorneys the 27th day of December, 2021.

Albert Gerhart, Pro Se